UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| - v. - | : | |
| | : | |
| VICTOR CHANI, | : | S11 05 Cr. 523 (LTS) |
|    a/k/a "Benaceur Chani," | : | |
| MOHAMED CHAFAI, | : | |
|    a/k/a "Simo," | : | |
| LARBI BENNIS, | : | |
| MUSTAPHA DAHOU, | : | |
| HASSAN BACHARY, | : | |
| AHMED CHOULLAM, and | : | |
| PAUL GALINSON, | : | |
| | : | |
|         Defendants. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**GOVERNMENT'S OPPOSITION TO DEFENDANT
PAUL GALINSON'S MOTION FOR SEVERANCE**

Defendant Paul Galinson has moved for severance, pursuant to Federal Rule of Criminal Procedure 14, from the remaining two co-defendants[1] in the trial of the above-referenced indictment — Victor Chani and Ahmed Choullam — on the ground that, due to purportedly inconsistent defenses, a joint trial would unduly prejudice his right to a fair trial. For the reasons set forth below, the Government submits that a joint trial would not jeopardize a fair trial for any defendant in the case and accordingly defendant Galinson's motion for severance should be denied.

---

[1] At the time of Galinson's motion, three co-defendants remained for trial. As the Court is aware, defendant Hassan Bachary entered a plea of guilty on Monday, February 11, 2008, and will thus not be proceeding to trial.

## BACKGROUND

Paul Galinson is charged in two counts of a three-count superseding indictment (the "Indictment"). Count One charges Galinson, along with his two remaining co-defendants and numerous others, with conspiring to violate the narcotics laws of the United States by importing a drug commonly known as hashish into the United States. Count Two charges Galinson, along with his two remaining co-defendants and numerous others, with conspiring to violate the narcotics laws of the United States by distributing and possessing with intent to distribute hashish. In both conspiracies, Galinson's primary role was to use his cargo courier service warehouse at JFK Airport to facilitate the safe passage of international shipments of hashish through the Airport and U.S. Customs and then out for distribution. The Indictment specifically mentions Galinson in four overt acts for each of the two charged conspiracies, each identifying a shipment or intended shipment of hashish through JFK Airport. (*See* Ind. ¶¶ 4(h), (i), (o), (cc); 7(h), (i), (o), (cc)).

The Government expects the proof at trial to establish that Galinson knowingly participated in the importation and distribution of hashish in the United States by accepting shipments containing hashish into his warehouse at JFK Airport, using his position as the owner of a cargo courier service at the Airport to facilitate the passage of those shipments through U.S. Customs, thereafter releasing those shipments to other hashish importers and dealers, and accepting significant payment for these services. Galinson accomplished these illegal goals by conspiring with numerous individuals involved in the hashish importation and distribution business, including but not limited to some of his co-defendants in the Indictment. However, the Government's proof of the charged conspiracies does *not* depend on showing that Galinson had

direct contact with (or necessarily even knowledge of) any of his two remaining trial co-defendants.[2]  As the Court is no doubt aware, it is not at all uncommon in a wide-ranging narcotics conspiracy such as that charged in the Indictment for various participants with different roles in the conspiracy to have no direct dealings with each other and even lack specific knowledge of each and every member of the conspiracy.

## ARGUMENT

A.    **Applicable Law on Discretionary Severance**

Any motion for severance is an uphill battle, given the strong policy in favor of joint trials.  Joint trials of defendants indicted together "play a vital role in the criminal justice system" as they "conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial."  *Richardson v. Marsh*, 481 U.S. 200, 209 (1987); *see Bruton v. United States*, 391 U.S. 123, 134 (1968).  Defendants who nonetheless seek a severance have two options:  arguing that the charges or defendants were not properly joined in a single indictment in the first instance under Rule 8 of the Federal Rules of Criminal Procedure, or arguing that properly joined charges or defendants should nonetheless be severed at the discretion of the trial court pursuant to Rule 14 of the Federal Rules of Criminal Procedure.  Here, Galinson is seeking only a discretionary severance under Rule 14.

---

[2]    This holds true as well for the hashish shipment referenced in paragraphs 4(h) and 7(h) of the Indictment, which connects both Choullam and Galinson to a single load of approximately 100 kilograms of hashish.  The Government expects the proof at trial to show that Choullam and Galinson never met (at least in connection with this load of hashish) and that any testimony offered by Galinson regarding this load would not inculpate Choullam in any sense.  This is especially true if, as discussed below, Galinson's proposed public authority defense did not extend to this load, which the Government expects would be the case.

Rule 14 of the Federal Rules of Criminal Procedure permits severance of properly joined defendants, at the discretion of the trial court, to avoid prejudice to a defendant or the Government. However, any analysis of prejudice under a Rule 14 motion must be viewed through the lens of the strong presumption in favor of joint trials. As the Supreme Court has explained:

> Many joint trials — for example, those involving large conspiracies to import and distribute illegal drugs — involve a dozen or more codefendants. . . . It would impair both the efficiency and the fairness of the criminal justice system to require . . . that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability — advantages which sometimes operate to the defendant's benefit. Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.

*Richardson v. Marsh*, 481 U.S. at 210. *See also United States v. Zafiro*, 945 F.2d 881, 886 (7th Cir. 1991) (Posner, J.) (joint trials reduce not only litigation costs but also "error costs," *i.e.*, the costs associated from depriving jury from making its determinations based on "the full picture"), *aff'd*, 506 U.S. 534 (1993).

Quite simply, the strong presumption is that defendants who are indicted together will be tried together. *See*, *e.g.*, *Zafiro v. United States*, 506 U.S. 534, 537 (1993) ("[t]here is a preference in the federal system for joint trials of defendants who are indicted together"); *United States v. Blount*, 291 F.3d 201, 209 (2d Cir. 2002); *United States v. Reyes*, 176 F.3d 52, 102 (2d Cir. 1999); *United States v. Henry*, 861 F. Supp. 1190, 1199 (S.D.N.Y. 1994); *United States v.*

*Kalevas*, 622 F. Supp. 1523 (S.D.N.Y. 1986). "This preference is particularly strong where . . . the defendants are alleged to have participated in a common plan or scheme." *United States v. Salameh*, 152 F.3d 88, 115 (2d Cir. 1998).

Given this presumption, the "prejudice" standard is difficult to satisfy and "defendants are not entitled to severance [under Rule 14] merely because they may have a better chance of acquittal in separate trials." *Zafiro*, 506 U.S. at 540. Even assuming that a particular defendant is prejudiced in some way by joinder, the issue under Rule 14 is whether that prejudice "is sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials." *United States v. Lanza*, 790 F.2d 1015, 1019 (2d Cir. 1986). Thus, under the Supreme Court's decision in *Zafiro*, a discretionary severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence," *Zafiro*, 506 U.S. at 539.[3] Indeed, the Supreme Court has instructed that even where the risk of prejudice is high, less drastic measures — such as appropriate limiting instructions — often suffice as an alternative to granting a Rule 14 severance motion. *Zafiro*, 506 U.S. at 53; *see also United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003). Courts have repeatedly recognized that any potential prejudice caused by a joint trial can be mitigated effectively by instructions to

---

[3] Because of the preference for joint trials of defendants indicted together, and the near-total discretion afforded the trial judge in addressing any potential prejudice, a defendant seeking review of denial of severance under Rule 14 on appeal bears an "extremely difficult burden," *United States v. Casamento*, 887 F.2d 1141, 1149 (2d Cir. 1989), of showing that he was so prejudiced by the joinder that he suffered a "miscarriage of justice" or was denied a constitutionally fair trial. *See United States v. Yousef*, 327 F.3d 56, 150 (2d Cir. 2003); *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993). Consequently, "[t]he principles that guide the district court's consideration of a motion for severance usually counsel denial." *Id.*

the jury that it must consider separately each individual defendant and each charge, and consider only the evidence that has been admitted against each defendant. *See Zafiro*, 506 U.S. at 540-41; *United States v. Hernandez*, 85 F.3d 1023, 1029-30 (2d Cir. 1996); *United States v. Romero*, 54 F.3d 56, 60 (2d Cir. 1995).

**B.    Discussion**

In his motion, Galinson argues that the possibility that he and his co-defendants at trial will present conflicting or inconsistent defenses requires that he be severed and tried alone. Galinson's argument is primarily based on two assertions — first, that he will present a "public authority defense" at trial, arguing that some of the allegations in the Indictment as to him are factually true but do not make out a criminal case because he was acting at all times with the full knowledge of a U.S. Customs official and as a confidential informant for that agency (Galinson Motion at 1-2; *see also* Galinson's Rule 12.3 Notice of Defense)[4]; and, second, his presumption that at least some of his co-defendants at trial will assert that the "alleged conduct did not occur," that the charged conspiracy did not exist, or that, "at a minimum, they were not involved" in the conduct or not members of the charged conspiracies (Galinson Motion at 2, 3). Of course, the latter argument is simply a guess on the part of Galinson as to what his co-conspirators may argue in their own defense, but even assuming these defenses are actually presented at a joint trial

---

[4]    The Government assumes for purposes of this motion that Galinson will actually attempt to present a public authority defense at trial, and that the Court may allow the defense. However, the Government does not believe, even assuming Galinson's version of the facts, that Galinson will be in a position to assert a public authority defense as a complete defense to the charges in the Indictment, or that he will be entitled to a charge on that defense to the jury at the close of the trial. We intend to address these issues further in our response to Galinson's Rule 12.3 Notice and in a motion *in limine*.

in this matter, they do not meet the standard for "mutually antagonistic" defenses that require severance.

Although courts, including the Second Circuit, once adhered to the view that the existence of defenses that could not both be credited justified a severance, *see, e.g.*, *United States v. Serpoosh*, 919 F.2d 835, 837-38 (2d Cir. 1990) (cited in Galinson Motion at 2), *Zafiro* operated to overrule these cases. *See United States v. Haynes*, 16 F.3d 29, 32 (2d Cir. 1994). Under *Zafiro*, the existence of mutually antagonistic defenses — even wholly irreconcilable ones — is not prejudicial in and of itself, nor does it afford a freestanding basis for a severance. Rather, under *Zafiro*, the party seeking severance on account of mutually antagonistic defenses must show not only that he and his co-defendant have antagonistic defenses, but also that the antagonism deprives him of a specific trial right or that simultaneous presentation of the defenses will somehow prevent the jury from reliably evaluating the evidence. *Zafiro*, 506 U.S. at 539-40; *Haynes*, 16 F.3d at 31-32. As the Second Circuit has noted, "an adversarial stance by a codefendant clearly does not, alone, require trials to be severed. Were this true, a virtual ban on multidefendant conspiracy trials would ensue since co-conspirators raise many different and conflicting defenses." *United States v. Cardascia*, 951 F.2d 474, 484 (2d Cir. 1991).

Accordingly, a defendant seeking a severance on the ground of mutually antagonistic defenses satisfies his burden of showing substantial prejudice only if "the jury, in order to believe the core of testimony offered on behalf of [one] defendant, must necessarily disbelieve the testimony offered on behalf of his co-defendant." *Haynes*, 16 F.3d at 31 (quotation omitted); *see also Salameh*, 152 F.3d at 116 ("In order to make a showing of mutually antagonistic or irreconcilable defenses, the defendant must make a factual demonstration that

7

acceptance of one party's defense would tend to preclude the acquittal of [the] other.") (internal quotation and citation omitted). In other words, mere "fingerpointing" by one defendant seeking to shift the blame to his co-defendant is not the sort of antagonism that commands a severance. *Casamento*, 887 F.2d at 1154.

Under the facts of this case, the type of conflict among defenses identified by defendant Galinson in his motions simply does not satisfy the requirement that accepting one defendant's, or group of defendants', theory of the case necessarily precludes the acquittal of the other defendants. As far as the Government is aware (based, in part, on the prior proffers of Galinson referenced in his motion), Galinson only intends to offer his "public authority" defense to rebut the allegations regarding the hashish shipment referenced in paragraphs 4(cc) and 7(cc) of the Indictment, as well as to rebut the general assertion that he was a member of a larger narcotics conspiracy. The Government's evidence regarding this particular shipment of hashish will not directly implicate any of the remaining trial co-defendants, and accordingly any defense offered by Galinson to this evidence is likely to have little to no impact on his trial co-defendants, nor are they likely in a position to offer evidence or arguments that make Galinson's defense on that particular evidence more or less convincing to the jury. As to the hashish shipments referenced in paragraphs 4(h), 4(i), 4(o), 7(h), 7(i) and 7(o), as well as others that the Government may seek to introduce at trial, it is the Government's understanding that Galinson intends to argue either that those shipments did not occur or that they did not involve his warehouse, or that he had no knowledge that the shipments contained hashish.

The Government is not aware of *any* evidence that Galinson intends to offer that directly implicates any of his trial co-defendants, nor that would require the jury to convict any of

them if they accepted Galinson's defense; the reverse is likewise true. The vague generalizations about possible testimony in Galinson's motion do not suggest otherwise. Even assuming that Galinson's testimony or other evidence offered for his public authority defense tends to support the Government's allegations that certain named conspirators were involved in a conspiracy to import or distribute hashish, it is difficult to see how evidence about these other individuals, who are not defendants at the trial, will be so prejudicial or inconsistent with the arguments of the trial co-defendants so as to deny either them or Galinson a fair trial. It is similarly difficult to understand how the defenses of Chani or Choullam — expected to be either that they did not participate in the charged conspiracy or that the Government has failed to prove the existence of the conspiracy charged in the Indictment — are necessarily inconsistent with Galinson's intended defense that he was aware at times of some hashish importation (not directly involving any trial co-defendant) but that he cannot be guilty of a criminal conspiracy because his participation in that importation, if any, was the direct result of authority granted by U.S. Customs.[5] Acceptance of one defendant's argument in this case thus does not require the acquittal or conviction of another defendant. Indeed, if Galinson's public authority defense were successful, there is some chance it could actually help some of his co-defendants because it would make the existence of the charged conspiracy more difficult to prove, as of course a person cannot criminally conspire with an agent of the government. The Government would thus have to prove that the other

---

[5] The Government considers it extremely unlikely that *any* defendant will argue at the trial that the conspiracies charged in the Indictment did not exist, as opposed to arguing that they did not participate in those conspiracies. At trial, the Government expects to call at least four co-conspirators who have pled guilty to these conspiracies and will testify about their existence, as well as offer evidence of several drug seizures made in the case and admissible inculpatory statements made by the trial defendants that establish the existence of the conspiracies. Accordingly, we do not expect this element to be in hot dispute at the trial.

defendants conspired with someone other than Galinson in order to convict them.  On the other hand, following presentation of the predicted defenses, a jury could just as easily conclude that all (or none, if the jury did not believe the Government met its burden) of the defendants knowingly participated in conspiracies to import and distribute hashish in the United States.  Certainly Galinson has not made the factual demonstration that acceptance of his defense by the jury would preclude the acquittal of any one of his trial co-defendants, nor that their successful defenses would lead inexorably to his conviction.  *See Salameh*, 152 F.3d at 115.  The latter scenario (the only one that Galinson has standing to make) appears particularly remote.  In any event, the court need not find a total harmony among possible defense arguments to deny a motion for severance.  In *Zafiro* itself, the denial of severance in the face of antagonistic defenses was affirmed even though one defense lawyer argued that his client was innocent and unaware that his girlfriend, a co-defendant, was "distributing drugs."  506 U.S. at 536.

> To the extent that Galinson's arguments about prejudice from antagonistic defenses are directed towards his own possible testimony or the possible testimony of co-defendants as to their own innocence, such arguments do not support severance, even if those claims of innocence have the tendency to implicate other defendants as the guilty parties.[6]  As the *Zafiro* Court held: "[A] fair trial does not include the right to exclude relevant and competent evidence.  A defendant normally would not be entitled to exclude the testimony of a former co-defendant if the district court did sever their trials, and we see no reason why relevant and

---

[6]    Again, it is not clear that Galinson has standing to seek a severance on the grounds that his possible testimony may be prejudicial to his trial co-defendants.  He would have to show, for example, that being cross-examined by his co-defendants' counsel if he testified at a joint trial would be so prejudicial (beyond the cross-examination to be expected from the Government) that he would be denied a fair trial.  He has not done so.

competent testimony would be prejudicial merely because the witness is also a co-defendant." *Id.* at 540; *see also Haynes*, 16 F.3d at 32 ("Although [appellant] was implicated by his codefendant['s] testimony, this was relevant competent evidence, and would have been received against [the appellant], in any event, if [the codefendant] had cooperated."); *Harwood*, 998 F.2d at 96 (presentation of mutually exclusive defenses at trial did not require severance given proper limiting instructions).

Finally, as noted above, severance is not required even where a defendant is able to demonstrate some prejudice from a joint trial involving antagonistic defenses. Rather, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." 506 U.S. at 539 (citing *Richardson v. Marsh*, 481 U.S. at 211). The decision regarding what relief is warranted, if any, is committed to the sound discretion of the district court. *Zafiro*, 506 U.S. at 539; *accord United States v. Beverly*, 5 F.3d 633, 637-38 (2d Cir. 1993); *Harwood*, 998 F.2d at 95.

## CONCLUSION

In his motion for discretionary severance, defendant Paul Galinson has failed to demonstrate how a joint trial with defendants Chani and Choullam will so prejudice him as to deny him a fundamental trial right or prevent the jury from making a reliable judgment about his guilt or innocence. Although asserting prejudice from inconsistent defenses, Galinson has not made any factual showing that acceptance by the jury of his co-defendants' defenses would preclude his own acquittal, or that the anticipated defenses are so mutually antagonistic or irreconcilable that the jury will be unable to properly weigh the evidence as to each defendant or reach a fair verdict. Accordingly, given the strong presumption in the law in favor of joint trials

11

of defendants indicted together, and for all the reasons set forth above, the Government respectfully requests that Galinson's motion for severance pursuant to Federal Rule of Criminal Procedure 14 be denied.

                                      Respectfully submitted,

                                      MICHAEL J. GARCIA
                                      United States Attorney for the
                                      Southern District of New York

by:      /s/                      
            Glen G. McGorty
            Margaret Garnett
            Jeffrey A. Brown
            Assistant United States Attorneys
            (212) 637-2200